IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


MARY LOU BUTTON,

            Plaintiff,

v.                          //   CIVIL ACTION NO. 1:13CV232
                                 (Judge Keeley)

KEVIN L. CHUMNEY and JANET L.
CHUMNEY, husband and wife, and
CHESAPEAKE APPALACHIA, LLC,

            Defendants.


MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

        Pending before the Court is the motion for summary judgment
(dkt. no. 27), filed by one of the defendants, Chesapeake
Appalachia, LLC ("Chesapeake"). For the following reasons, the
Court **GRANTS** the motion.

I. BACKGROUND

        This case concerns the 2008 tax foreclosure sale of the
mineral interest in and underlying 46.25 acres, lying and being
situated upon Kings Run Well in Clay District, Monongalia County,
West Virginia. The issue on summary judgment is whether the tax
sale purchaser, Kevin Chumney ("Chumney"), exercised reasonably
diligent efforts to provide notice to redeem in accordance with
West Virginia law and constitutional due process.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

## A.   Factual Background

R.W. Sine owned the real estate situated upon Kings Run Well (including both the surface and mineral estates) prior to his death in 1939.  By will, he devised a dower interest in the property to his wife, Lou Kent Sine, who died in 1949.  She, in turn, devised the entire interest to her daughter, Hazeltine S. Mills ("Mills"). In 1981, Mills conveyed the surface estate and her mineral interest lying above the Pittsburgh vein of coal to Consol Land Development Company.  In the same instrument, Mills excepted and reserved all of the mineral interest lying below the Pittsburgh seam of coal (the "Subject Minerals").  When Mills died in 1999, the Subject Minerals passed by will to her daughter and the plaintiff in this case, Mary Lou Button ("Button").[1]

For nine years, Button failed to record the will in the Monongalia County Circuit Court, and never paid the requisite property taxes.[2]  Accordingly, the Deputy Commissioner of Delinquent and Nonentered Lands of Monongalia County, Darrell W. Ringer ("Ringer"), sold the Subject Minerals at auction.  On August 8, 2008, Chumney, an entrepreneurial real estate investor, placed

_____

[1] It appears from the record that Button resides in New Mexico. (Dkt. No. 28 at 22-24).

[2] As of 2009, the redemption amount totaled $680.15.

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

the winning bid of one dollar.  On October 27, 2008, the West Virginia State Auditor approved the transaction, which triggered a statutory 45-day period for Chumney to compile a list of individuals entitled to notice to redeem and submit it to Ringer. See W. Va. Code § 11A-3-52(a)(1).

Through his search, Chumney determined that Mills was the record owner of the Subject Minerals and that her address was located in Triangle, Virginia.[3]  Accordingly, Ringer sent a notice to redeem through certified mail to the Virginia address.  A week later, unbeknownst to Chumney, the notice was returned to Ringer as undeliverable.

Under § 11A-3-55, "[i]f the address of any person entitled to notice . . . is unknown to the purchaser and cannot be discovered by due diligence on the part of the purchaser, the notice shall be served by publication."  In accordance with the statute, Ringer published the notice in a local newspaper once a week for three successive weeks.  The delinquent taxes remained unredeemed, and Ringer conveyed the Subject Minerals to Chumney by quitclaim deed dated July 6, 2009.  Attached to the deed was the envelope of the

---

[3] In fact, Mills had left Virginia in the 1970s to move to State College, Pennsylvania, where she resided until her death.

notice that had been returned to Ringer as undeliverable.  Chumney

recorded the quitclaim deed on July 24, 2009.[4]

On December 23, 2009, Chumney and his wife (collectively, the

"Chumneys") conveyed five tracts of property to William and Diane

Gaston (collectively, the "Gastons"), including the Subject

Minerals, via a general warranty deed.  On March 31, 2010, as part

of a 17-tract transfer through a special warranty deed, the Gastons

conveyed the Subject Minerals to Chesapeake Appalachia, LLC

("Chesapeake").

**B.    Procedural Background**

On July 5, 2012, Button sued the Chumneys, the Gastons, and

Chesapeake in Monongalia County Circuit Court.[5]  She eventually

filed an amended and second amended complaint, seeking to set aside

the tax deed and its successor deeds.  In addition, Button seeks

compensatory and punitive damages, as well as attorneys' fees.

---

[4] In August 2009, notwithstanding Chumney's recorded tax deed,
Button leased the Subject Minerals to Novus Exploration, LLC for a
primary term of five years.

[5] According to Button, prior to filing her complaint, pursuant to
§ 11A-4-3(b), she tendered to the defendants payment of the amount which
would have been required for redemption, together with any taxes which
had been paid on the property since delivery of the tax deed, with 12%
annual interest.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

The second amended complaint asserts two counts.  In Count I,
Button alleges that "Chumney failed to exercise reasonably diligent
efforts to provide notice of [his] intention to acquire title to
the subject mineral interest."  In Count Two, Button asserts a
cause of action under 42 U.S.C. § 1983 for the violation of her
Fourteenth Amendment due process right to fair notice preceding the
sale of her property.[6]  Moreover, she alleges that Chumney's
conduct was "malicious, intentional, avaricious, reckless and/or
callously indifferent to [her] constitutionally and statutorily
protected rights."

On October 3, 2013, the parties agreed to dismiss the Gastons
from the case.  In exchange, the Gastons assigned their claims
against the Chumneys to Chesapeake.  Chesapeake and the Chumneys
removed Button's second amended complaint to this Court on October
15, 2013.  On the same date, Chesapeake filed an answer and cross-
claim against the Chumneys, asserting the Gastons' right to

---

[6] The Court's subject-matter jurisdiction is based on Count II of
Button's second amended complaint, which "aris[es] under the
Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.
Moreover, this Court has previously asserted federal question
jurisdiction over an identical § 1983 claim.  See Huggins v. Prof'l Land
Resources, LLC, No. 1:12CV46, 2013 WL 431770, at *4 (N.D.W. Va., Jan. 25,
2013) (citing Plemons v. Gale, 396 F.3d 569, 572 n.3 (4th Cir. 2005))
(holding that "lien purchasers required to perform a reasonably diligent
search by the State's tax sale statutes act under color of state law").

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

contribution and indemnification, pursuant to the December 23, 2009 general warranty deed.

On April 14, 2014, Chesapeake filed a motion for summary judgment, arguing that "Chumney exercised reasonable diligence in searching the public records of Monongalia County to discover the identity and whereabouts of Mills." On May 5, 2014, Button responded that a reasonably diligent search would have led Chumney to Mills's State College, Pennsylvania address and, ultimately, to Button.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

whether genuine issues of triable fact exist.  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the
Court of the basis for the motion and of establishing the
nonexistence of genuine issues of fact.  <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986).  Once the moving party has made the
necessary showing, the nonmoving party "must set forth specific
facts showing that there is a genuine issue for trial."  <u>Anderson</u>,
477 U.S. at 256 (internal quotation marks and citation omitted).
The "mere existence of a scintilla of evidence" favoring the
nonmoving party will not prevent the entry of summary judgment; the
evidence must be such that a rational trier of fact could
reasonably find for the nonmoving party.  <u>Id.</u> at 248–52.

### III. DISCUSSION

The West Virginia legislature has provided a statutory scheme
that enables the state's counties to foreclose on property for
which those obligated to pay taxes on the property have failed to
do so.  <u>See</u> § 11A-3-1, <u>et seq.</u>  Its purposes include, among others,
"to permit deputy commissioners of delinquent and nonentered lands
to sell such lands" and "to secure adequate notice to owners of
delinquent and nonentered property of the pending issuance of a tax
deed."  § 11A-3-1.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

Accordingly, when taxes are delinquent, and other statutory
means of selling the property have failed, the deputy commissioner
"may sell such lands . . . to any party willing to purchase such
property."   § 11A-3-48.   Within two weeks following the
transaction, the deputy commissioner must report the sale to the
state auditor, whose approval is then required.  § 11A-3-51.  If
the sale is approved, before receiving a deed to the property, the
purchaser, within 45 days of approval, must "[p]repare a list of
those to be served with notice to redeem and request the deputy
commissioner to prepare and serve the notice."  § 11A-3-52.

In serving the notice, the deputy commissioner is required to
provide the form notice set forth in § 11A-3-54 to non-resident
recipients by certified mail.  § 11A-3-55.  However, "[i]f the
address of any person entitled to notice . . . is unknown to the
purchaser and cannot be discovered by due diligence on the part of
the purchaser, the notice shall be served by publication."  Id.
Finally, "[i]f the real estate described in the notice is not
redeemed within the time specified therein, . . . the deputy
commissioner shall, upon the request of the purchaser, make and
deliver to the person entitled thereto a quitclaim deed for such
real estate."  § 11A-3-59.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

Those entitled to notice to redeem, but who were not properly served with the requisite notice, may bring a civil action to set aside a tax deed within three years of its delivery to the grantee. § 11A-4-4(a). However,

> [n]o title acquired pursuant to this article shall be set aside in the absence of a showing by clear and convincing evidence that the person who originally acquired such title failed to exercise <u>reasonably diligent</u> efforts to provide notice of his intention to acquire such title to the complaining party or his predecessors in title.

§ 11A-4-4(b) (emphasis added).

Button, of course, is the "complaining party" in this case. Importantly, she admits that she was "not reasonably ascertainable as an owner of any interest in the Subject Minerals from the public records pertaining to the Subject Minerals maintained by the Monongalia County Clerk, the Monongalia County Sheriff's Tax Office, or the Monongalia County Assessor's Officer prior to July 6, 2009." (Dkt. No. 28-2 at 3). Thus, no triable issue exists as to whether Chumney's efforts to notify Button were reasonably diligent.

The statute, however, permits Button to satisfy her burden of proving, by clear and convincing evidence, the absence of reasonably diligent efforts vis-a-vis the complaining party <u>or</u> the tax purchaser's predecessors in title. Chesapeake refutes this

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

straightforward interpretation and, in reliance on a footnote in
the decision of the West Virginia Supreme Court of Appeals in
Reynolds v. Hoke, 702 S.E.2d 629, 633 n.8 (W. Va. 2010) (per
curiam), urges the Court to eliminate "predecessors in title" from
its reading of the statute. (Dkt. No. 38 at 3-4) ("[E]fforts aimed
at providing notice to the complaining party's predecessor in
interest are irrelevant, despite the 'predecessors in title'
language found in Section 11A-4-4(b)."). Chesapeake's
interpretation of Reynolds is unpersuasive.

In Reynolds, Jerry Hoke purchased the subject real estate at
the Monroe County Sheriff's tax sale in October 2006, and received
a certificate of sale identifying "REYNOLDS BILL ET UX" and
"BEVERLY HAYNES" as the taxpayers. Id. at 630. Accordingly, Hoke
notified the Reynoldses and Haynes of their right to redeem. Id.
He also searched the public records in the Monroe County Clerk's
office for any deed transfers indexed under the name "Bill
Reynolds." Id. at 632. He did not, however, search for transfers
indexed under "Beverly Haynes." Id. Finding no transfers, Hoke
did not notify any additional parties.

By not searching for transfers indexed under Haynes's name,
Hoke failed to discover that the Reynoldses had passed away and
that Haynes subsequently had conveyed the property to Earl and Anna

Reynolds by quitclaim deed dated February 2, 2006. <u>Id.</u> at 631.
Earl and Anna Reynolds had recorded their deed with the Monroe
County Clerk on June 7, 2006 - four months prior to the tax sale.
<u>Id.</u>

In April 2008, the taxes remained delinquent, and the Monroe
County Commission conveyed the property to Hoke by tax deed. <u>Id.</u>
Two months later, Earl and Anna Reynolds sued Hoke to set aside the
tax deed. <u>Id.</u> The Monroe County Circuit Court granted Hoke
summary judgment after determining that, under § 11A-4-4(b), Earl
and Anna Reynolds had failed to prove by clear and convincing
evidence that Hoke's efforts at notification were not "reasonably
diligent." <u>Id.</u>

On appeal, the West Virginia Supreme Court of Appeals reversed
and remanded. <u>Id.</u> at 634. It reasoned that, based on the
certificate of sale, Hoke had notice that Haynes was a person
entitled to pay taxes on the property. <u>Id.</u> at 632. Thus, in
undertaking reasonably diligent efforts to ascertain those
individuals entitled to notice to redeem, Hoke should have searched
for transfers indexed under "Beverly Haynes." <u>Id.</u> at 632-33. Such
a search would have uncovered the June 2006 deed conveying the
property to Earl and Anna Reynolds. <u>Id.</u> at 633.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]

Hoke argued that, because he had properly notified Earl and
Anna Reynolds' "predecessors in title" under § 11A-4-4(b), he was
absolved from the responsibility of notifying the record owners.
Id. at 633 n.8.  The court dismissed Hoke's argument as follows:

> We find [Hoke's] argument to be unavailing.  In the
> instant case, the sheriff's sale at which the appellee
> acquired the tax lien to the subject property occurred on
> October 24, 2006.  Therefore, [Hoke] was required by W.
> Va. Code § 11A-4-4(b), to provide notice to parties who
> were of record at any time after October 31, 2007, and on
> or before December 31, 2007.[7]  This certainly includes
> [Earl and Anna Reynolds] who were of record as of June 7,
> 2006, which was several months prior to the sheriff's
> sale.  Therefore, under our law, [Hoke] was required to
> provide notice to [Earl and Anna Reynolds].

Id.

From this passage, Chesapeake infers that predecessors in
title are "irrelevant," and that Button's argument regarding
efforts Chumney should have undertaken to notify Mills is
"inapposite." (Dkt. No. 38 at 3-4).  A fair reading of Reynolds
does not support such an inference, however.  Footnote 8 does
nothing more than explain that, as record owners of the property
during the relevant time period, Earl and Anna Reynolds were
entitled to notice, and Hoke could not skirt his obligation by

_____

[7] See § 11A-3-19(a); see also Syl. Pt. 1, Wells Fargo Bank, N.A. v.
UP Ventures II, LLC, 675 S.E.2d 883, 884 (W. Va. 2009).

providing notice to predecessors in title in lieu of the record owners.

Although the West Virginia Supreme Court of Appeals did not elaborate further on this issue, Hoke's argument was flawed in another respect. West Virginia's legislature did not draft § 11A-4-4(b) to provide notification options to a tax lien purchaser. That is to say, Hoke incorrectly wielded the statute as a means of satisfying his duties by notifying <u>either</u> Earl and Anna Reynolds <u>or</u> their predecessors in title. Rather, the statute's functions all relate to a plaintiff's obligations in a suit to set aside a tax deed based on insufficient notice. First, § 11A-4-4(b) places the burden of proof on the plaintiff. Second, it defines the burden as "clear and convincing evidence." Third, it permits the plaintiff to satisfy his or her burden of proof relative to either the "complaining party" (i.e., himself or herself) or the tax purchaser's "predecessors in title."

Thus, the Court rejects Chesapeake's assertion that § 11A-4-4(b) should be read as if the final five words had never been written. <u>See</u> Syl. Pt. 6, <u>Davis Mem'l Hosp. v. West Virginia State Tax Comm'r</u>, 671 S.E.2d 682, 683 ("A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute.")

(quoting Syl. Pt. 3, <u>Meadows v. Wal-Mart Stores, Inc.</u>, 530 S.E.2d 676, 679 (W. Va. 1999)). Instead, the Court will analyze whether Button has satisfied her burden of demonstrating by clear and convincing evidence that Chumney's efforts to notify Mills, a predecessor in title, were reasonably diligent.[8]

Although Button challenges Chumney's notification efforts under both West Virginia law and the Fourteenth Amendment, the Court addresses her claims together as a single issue because "West Virginia's statutory notice requirements parallel the requirements of the United States Constitution."[9] <u>Plemons v. Gale</u>, 396 F.3d 569, 572 (4th Cir. 2005). For this reason, the Court draws on both bodies of law to resolve the case <u>sub judice</u>.[10]

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice

---

[8] Whether due process requires a tax sale purchaser to provide notice to a decedent, or whether a decedent is legally capable of receiving notice, are questions left for another day, as the matter presently before the Court does not require their resolution.

[9] In <u>Plemons</u>, the Fourth Circuit rejected the argument that notice as required under West Virginia law is less exacting than the notice requirements mandated by the Constitution. 396 F.3d at 572 n.2.

[10] Of course, if West Virginia law demanded notice more exacting than that required under the Constitution, then the body of case law interpreting the Fourteenth Amendment's due process clause would be relevant only to Button's § 1983 cause of action in Count II of her second amended complaint.

reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an
opportunity to present their objections." <u>Mullane v. Cent. Hanover
Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950).  This test has long
been applied to determine whether notice passes constitutional
muster.  <u>See, e.g.</u>, <u>Jones v. Flowers</u>, 547 U.S. 220, 226 (2006);
<u>Plemons</u>, 396 F.3d at 573.  In 1983, the Supreme Court honed its
standard by requiring the state to undertake "reasonably diligent
efforts" to ascertain the address of one entitled to notice.  <u>See
Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791, 798 n.4 (1983).

       To this end, West Virginia law requires tax lien purchasers,
through the deputy commissioner, to notify individuals of their
right to redeem the property before title is transferred.  And
efforts undertaken by the purchaser to identify these individuals
must be "reasonably diligent."  Whether a tax lien purchaser
performs his or her duties in a reasonably diligent manner,
however, can be examined only "under all the circumstances" of a
given case.  <u>See Mullane</u>, 339 U.S. at 314.

       In <u>Citizens Nat'l Bank v. Dunnaway</u>, 400 S.E.2d 888, 889 (W.
Va. 1990) (per curiam), Constance Persinger had owned land that was
indexed in the Putnam County records for tax purposes under
"Persinger."  After she married Troy Dunnaway, the couple executed

a deed of trust on the property, naming Citizens National Bank as the beneficiary and identifying "Troy E. Dunnaway and Constance L. Dunnaway (formerly Constance L. Persinger)" as the grantors.  Id. Although Citizens recorded the deed of trust, the Putnam County Clerk indexed it only under "Dunnaway" and not "Persinger."  Id.

     After the Dunnaways failed to pay the property taxes, the Putnam County Sheriff commenced the process of selling the delinquent property.  Id. at 890.  In an effort to identify those entitled to notice of the sale, the Sheriff searched for any deeds indexed under "Persinger," but did not search under "Dunnaway." Id.  Thus, he did not find Citizens's deed of trust, and did not send notice to the bank prior to selling the land at auction to the State of West Virginia.  Id. 890-91.  The state subsequently sold the land to the highest bidder, in favor of whom the Putnam County deputy commissioner of forfeited and delinquent lands executed and delivered a tax deed.  Id. at 891.

     Citizens then sued to set aside the tax deed, arguing that it had not received constitutionally required notice of the sale.  Id. The circuit court granted summary judgment to the defendants and Citizens appealed.  Id.  West Virginia's highest court held that "the lack of personal notice to the Bank was caused by an improperly indexed deed of trust that could not be located by

reasonably diligent efforts, and, therefore, no due process violation exists to vitiate the sale." Id. at 893.

A decade after Dunnaway, the West Virginia Supreme Court of Appeals again addressed the issue of whether an organization with a claim of interest in real property was entitled to due process notification that the state was selling the property for delinquent taxes. See Mingo Cnty. Redev. Auth. v. Green, 534 S.E.2d 40, 49 (W. Va. 2000). In Green, the Mingo County Redevelopment Authority, which had brought condemnation proceedings against the subject property in November 1995, received a favorable judgment granting it immediate possession in September 1997. Id. at 42-43. In April 1997, while the condemnation proceedings remained pending, the state deputy commissioner of delinquent and nonentered lands sold the property at auction for delinquent taxes. Id. at 43. In October 1997, the state auditor conveyed the property to the grantee designated by the tax lien purchaser by a tax deed. Id. The Mingo County Redevelopment Authority then sued to have the tax deed set aside. Id.

After the Mingo County Circuit Court set aside the tax deed, the state auditor appealed. Id. at 42. As the West Virginia Supreme Court of Appeals explained, "the only way that the Redevelopment Authority may successfully challenge the conveyance

of the deed to the new purchaser is to show that [it] should have been on the list prepared pursuant to W. Va. Code § 11A-3-52," which requires a tax lien purchaser to "[p]repare a list of those to be served with notice to redeem." Id. at 49. Interestingly, rather than focusing on the efforts undertaken by the purchaser or the state to notify the Redevelopment Authority, the court concentrated on the efforts of the Redevelopment Authority to place the state auditor on notice of the condemnation proceedings. Id. It observed that, "as of the time of the [tax] sale, the Redevelopment Authority had not given constructive notice of its standing by filing a lis pendens, nor had it served the Auditor or Deputy Commissioner Sluss with the complaint in its condemnation action." Id. Moreover, although the Redevelopment Authority had called the auditor's office to notify it of the condemnation proceedings, the court declined to find that a tax lien purchaser's reasonably diligent efforts included inquiry into phone calls to the auditor's office from a potential claimant. Id.

Taken together, the Reynolds, Dunnaway, and Green decisions provide useful guidance as to the efforts tax sale purchasers in West Virginia must undertake to perform their constitutional function of notice. For example, Dunnaway explains that "extraordinary efforts [i.e., searching beyond publicly available

records] are not constitutionally required." 400 S.E.2d at 893. And <u>Green</u> reminds us that the reasonableness of a tax purchaser's search often depends on the efforts of the complaining party to place others on notice of his or her interest in the property. 534 S.E.2d at 49.

The facts of the instant case, however, are more neatly couched between the decision of the Fourth Circuit in <u>Plemons</u> and the decision of the West Virginia Supreme Court of Appeals in <u>Wells Fargo Bank, N.A. v. UP Ventures II, LLC</u>, 675 S.E.2d 883 (W. Va. 2009). In <u>Plemons</u>, the plaintiff purchased property located on Echo Road in South Charleston, West Virginia and duly recorded the deed. 396 F.3d at 571. Because she did not pay the property taxes, however, the Kanawha County Sheriff sold a tax lien on the property to Advantage 99 TD in November 2000. <u>Id.</u> Unaware of the tax sale, in 2001, the plaintiff moved to an address on Quarry Pointe and rented the Echo Road property to tenants. <u>Id.</u> In order to receive a tax deed, Advantage prepared a list of those entitled to notice to redeem - which included the names of the plaintiff and her tenants - and filed it with the Kanawha County Clerk. <u>Id.</u> The clerk then sent notice by certified mail, return receipt requested, to several Echo Road addresses and a Garden Street address, but not to the Quarry Pointe address. <u>Id.</u> The notices were promptly

19

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

returned as undeliverable.  Id.  Nevertheless, in May 2002, the
Clerk issued a tax deed for the Echo Road property to Advantage,
which then conveyed it to Douglas Gale.  Id.  The plaintiff became
aware of the sale in January 2003, and sued to set aside the tax
deed.  Id.

The United States District Court for the Southern District of
West Virginia granted the plaintiff summary judgment after
concluding that she had not received constitutionally adequate
notice.  Id. at 572.  It determined that, in response to the
undelivered notices, Advantage could have consulted the telephone
directory, asked the tenants at the Echo Road property, or inquired
with the mortgagee-bank in order to find the plaintiff's address.
Id. at 577.

On appeal, the Fourth Circuit framed the issue as "what
efforts must be made by a party charged with giving notice of
irrevocable loss of property via a tax sale, when it is, or should
be, apparent from the initial mailings' prompt return that they
have failed to provide any notice to the intended recipient." Id.
at 574.  The Fourth Circuit reasoned as follows:

> [I]nitial reasonable efforts to mail notice to one
> threatened with loss of property will normally satisfy
> the requirements of due process.  However, when prompt
> return of an initial mailing makes clear that the
> original effort at notice has failed, the party charged

> with notice must make reasonable efforts to learn the
> correct address before constructive notice will be deemed
> sufficient. . . . Thus, the district court properly held
> that the reasonable diligence standard mandated by
> <u>Mullane</u> and its progeny required some followup effort
> here.

<u>Id.</u> at 576.

Nonetheless, the Court of Appeals determined that the followup efforts that the district court suggested Advantage could have taken fell outside the scope of what is reasonably diligent. <u>Id.</u> at 577. Instead, it concluded that "reasonable diligence required Advantage to search all publicly available county records once the prompt return of the mailings made clear that its initial examination of the title to the Echo Road property had not netted Plemons' correct address." <u>Id.</u> at 578. Because the record did not reveal the efforts Advantage had taken in this regard, or whether such a search would have uncovered Plemons' proper address, the Fourth Circuit remanded the case to the district court "for resolution of these questions." <u>Id.</u>

On remand, the district court found that Advantage made no further efforts to locate the plaintiff when her notice was returned as undeliverable; however, any additional efforts would have proved futile because the plaintiff's correct address was not ascertainable from the public records. <u>Plemons v. Gale</u>, 382 F.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

Supp. 2d 826, 828 (S.D.W. Va. 2005), <u>aff'd by</u> <u>Plemons v. Gale</u>, 161
Fed. App'x 334 (4th Cir. 2006) (per curiam).

Several years after <u>Plemons</u>, the West Virginia Supreme Court
of Appeals addressed a similar issue in <u>Wells Fargo Bank, N.A. v.</u>
<u>UP Ventures II, LLC</u>, 675 S.E.2d 883, 885-86 (W. Va. 2009). There,
a bank that had recorded a mortgage lien on the subject property
after a tax purchaser had compiled the list of those entitled to
notice argued that <u>Plemons</u> required the tax purchaser to conduct
followup efforts to ascertain additional claimants. The West
Virginia Supreme Court of Appeals rejected the bank's argument, and
distinguished <u>Plemons</u> by pointing out that "the bank was not a
party of record at the time notice was required to be sent." <u>Wells</u>
<u>Fargo</u>, 675 S.E.2d at 887. It determined that "<u>Plemons</u> does not
require a tax sale purchaser to conduct follow-up efforts, when the
proper parties are served, to identify those parties who are not of
record at the time the initial notices are required to be sent."
<u>Id.</u>

Here, if the focus were on Button, who was not a party of
record, this case would fall directly in line with <u>Wells Fargo</u>.
But because the focus is on Mills, who was a party of record when
Chumney conducted his title abstract, the instant case and <u>Wells</u>
<u>Fargo</u> are not on all fours. <u>Plemons</u>, likewise, is distinguishable

from this case because, prior to the issuance of the tax deed,

Chumney lacked knowledge that the notice sent to Mills's Virginia

address had been returned as undeliverable.[11]   In contrast,

"Advantage knew that [the plaintiff] had not received actual notice

of the pending tax sale."  Plemons v. Gale, 298 F. Supp. 2d 380,

389 (S.D.W. Va. 2004), vacated and remanded by Plemons, 396 F.3d at

578.  Thus, because Chumney had no reason to follow up with his

research, the two-step inquiry set forth in Plemons does not apply.

    Still, Button argues that, irrespective of any obligation

Chumney may have had to conduct followup research, he should have

reasonably ascertained Mills's Pennsylvania address through his

original search.  In his responses to Button's interrogatories,

Chumney explained that his title search consisted of speaking with

personnel at the Monongalia County Assessor's Office and Tax

---

[11] Button makes the novel argument that, given his experience in
delinquent property transactions, Chumney had a duty to inquire as to
whether the notice to Mills had been returned.  The West Virginia Supreme
Court of Appeals has relied on the Black's Law Dictionary definition of
"reasonable diligence," which requires a "fair degree of diligence
expected from someone of ordinary prudence under circumstances like those
at issue."  Reynolds, 702 S.E.2d at 632 (emphasis added).  The "ordinary
prudence" standard of reasonableness does not account for Chumney's
individual experience or knowledge.  Moreover, even if Chumney had
learned that the notice had been returned, which he had not, he still
would have been in the same position as he was when he began his original
search, i.e., without knowledge of Button's existence, let alone her
address.  Thus, the starting point under either scenario is what a
reasonably diligent search would have uncovered with respect to Mills.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

Office; performing a computer search; checking the debtor/debtee, grantor/grantee, and will indexes; and searching for records in the Monongalia County Assessor's Office.[12]   (Dkt. No. 28-8 at 1-2). Despite these efforts, Chumney failed to find several leases and deeds recorded with the Monongalia County Clerk in the 1980s, which contained Mills's Pennsylvania address and social security number.

Chesapeake does not dispute that Chumney should have found Mills's Pennsylvania address.  However, it argues that notice sent to the State College, Pennsylvania address would have yielded an outcome identical in result to the notice sent to the Triangle, Virginia address.  Namely, the notice would have been returned to Ringer as undeliverable without Chumney's knowledge.  Ringer then would have published notice in the local newspaper to the same effect, the property taxes would have remained unredeemed, and a tax deed would have been issued to Chumney.  Chesapeake's expert, J. Thomas Lane, confirms that, "if Mr. Chumney had provided the last known State College, Pennsylvania address for Hazeltine Mills to Mr. Ringer for use with the certified mailing, the return receipt would have been returned to Mr. Ringer as undeliverable in

---

[12] At his deposition, Chumney testified that he learned of Mills's Virginia address through "the lady in the map office."  (Dkt. No. 36-1 at 16).

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

the same manner as the original mailing to the Triangle, Virginia address was returned." (Dkt. No. 28-10 at 1-2).

Button counters that a previous mailing to the Pennsylvania address had been returned to the tax office with the notation "deceased." She half-heartedly speculates that a notice to redeem sent to the Pennsylvania address likewise would have been returned with the same notation. Even if that were the case, however, nothing suggests that Ringer would have notified Chumney of the returned mailing simply because it was marked "deceased," rather than "undeliverable." As noted earlier, Chumney's lack of knowledge in this regard exempts him from the duty to perform followup efforts.

With regard to the envelope marked "deceased," Button argues that, had Chumney inquired further, the tax office would have produced it. However, Button's own expert, Robert Shuman ("Shuman"), performed his own search and testified at his deposition that he was unable to find anything indicating that Mills had died. (Dkt. No. 28-11 at 8-9). Moreover, Sheriff Kenneth Kisner of Monongalia County, who oversees the tax office, swore under oath that returned envelopes "are not made generally available to the public in the Tax Office and are not publicly recorded." (Dkt. No. 28-12 at 2). Further, the envelope had been

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

stored in a warehouse since 2007 - well before Chumney performed

his search. Id. at 3.

Finally, Button offers two avenues by which Chumney might have

discovered her identity as the titleholder. First, she argues that

Chumney should have inquired with the county in which Mills's State

College, Pennsylvania address was located in order to identify any

wills indexed under Mills's name. According to Button, such

inquiry would have revealed her status as Mills's heir. However,

searching the records of counties other than the one in which the

property is located, and especially counties outside the state

where the property is located, exceeds the bounds of reasonable

diligence. Even Shuman concurs that "[i]t wouldn't make much sense

to [search] outside the county." (Dkt. No. 28-11 at 4); see also

Plemons, 396 F.3d at 578 ("[R]easonable diligence required

Advantage to search all publicly available county records.")

(emphasis added).[13]

Second, Shuman opines in his deposition testimony that

reasonable diligence required Chumney to search Mills's social

_____

[13] Indeed, within her own brief, Button states that "under West Virginia law, tax sale purchasers are required to conduct a reasonably diligent search of public records in the county in which the delinquent property is located . . . ." (Dkt. No. 36 at 5) (emphasis added).

security number on the Internet.[14]  (Dkt. No. 28-11 at 4-5, 8-9).
According to Shuman, "Googling" the social security number, or
entering it into the Social Security Death Index, turns up Mills's
date of death.  Id.  Besides lacking a basis in law, Shuman's
opinion places a burden on tax sale purchasers to scrub Internet
search engines and databases to find any available information that
could then be used to locate the titleholder of the delinquent
property.

Such an extension of "reasonableness" inevitably would lead to
judicial line-drawing between search engines and databases that are
reasonable and those that are not.  Given the vast resources
available on the Internet, courts would be unable to define a
useful standard in this regard.  Additionally, courts would face
the impossible task of determining whether information currently
available was similarly available at the time of the tax sale
purchaser's search.  For these reasons, the Court rejects the
proposition that reasonable diligence required Chumney to find and
utilize information available solely on the Internet.  Cf. Jones,
547 U.S. at 235-36 ("Jones believes that the Commissioner should

---

[14]  Notwithstanding Shuman's testimony in this regard, Button
expressly abandons this line of argument in her brief.  (Dkt. No. 36 at
8) (stating that the reasonableness of Internet searches "does not need
to be examined for the purposes of this motion").

**MEMORANDUM OPINION AND ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

have searched for his new address in the Little Rock phonebook and other government records such as income tax rolls. We do not believe the government was required to go this far."); <u>Mullane</u>, 339 U.S. at 317-18 ("[I]mpracticable and extended searches are not required in the name of due process.").

### IV. CONCLUSION

Under the circumstances of this case, Button has failed to demonstrate by clear and convincing evidence that Chumney did not exercise reasonably diligent efforts to notify the deceased predecessor in title of his intent to acquire the Subject Minerals through a tax deed. It is undisputed that Button was not ascertainable as the titleholder from the publicly available records in Monongalia County. Moreover, contrary to Button's urging, notice sent to Mills's Pennsylvania address only to be returned to the deputy commissioner fails to cure any potential due process concerns. Finally, the additional efforts that Button argues Chumney should have taken fall outside the bounds of reasonableness.

For these reasons, both counts of Button's second amended complaint, as well as Chesapeake's cross-claim, fail as a matter of

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

law. Therefore, the Court **GRANTS** Chesapeake's motion for summary

judgment and **DISMISSES** this case in its entirety **WITH PREJUDICE.**

It is so **ORDERED.**

The Court directs the Clerk to enter a separate judgment

order, to remove this case from the Court's active docket, and to

transmit a copy of this Memorandum Opinion and Order to counsel of

record.

DATED: June 27, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE